UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

---------------------------------------------------------X
JOHN DOE,

        **Plaintiff,**

    -against-

THE OHIO STATE UNIVERSITY,
GAIL CAPEL STEPHENOFF,
and JACK MINER,
        **Defendant.**
---------------------------------------------------------X

Civil Action No:

COMPLAINT AND
DEMAND FOR JURY TRIAL

Plaintiff John Doe[1] (hereinafter referred to as "Plaintiff" or "John Doe"), by his attorneys Rosenberg & Ball Co, LPA and Warshaw Burstein, LLP, sues defendants, The Ohio State University ("OSU"), Gail Capel Stephenoff ("Stephenoff"), in her individual capacity and in her official capacity as Interim Executive Director of Undergraduate Admissions, and Jack Miner ("Miner"), in his individual capacity and in his official capacity as the University Registrar, (collectively, "Defendants"), and seeks damages, declaratory relief, and permanent injunctive relief against Defendants, and any other and further relief that this Court deems just and proper, and states as follows:

## THE NATURE OF THIS ACTION

1.    Plaintiff was unlawfully expelled from OSU in violation of his due process rights. Plaintiff, a transfer student, had been enrolled at OSU for nearly two years at the time of his dismissal. Moreover, he was five weeks away from completing his spring semester when OSU took the unlawful actions giving rise to the Complaint. Plaintiff's ability to graduate with his

---

[1]     Plaintiff has filed, contemporaneously with this complaint, a motion to proceed pseudonymously.

{1097049.1 }

rightfully earned degree is in serious jeopardy. OSU's actions, if left undisturbed, will destroy nearly two years of academic progress and cause Plaintiff irreparable harm.

## THE PARTIES

2. Plaintiff resides in Las Vegas, Nevada. During the events described herein, Plaintiff was a senior student at OSU.

3. Defendant OSU is a non-profit corporation organized under the laws of the State of Ohio operating as a public research university located in Columbus, Ohio.

4. Defendant Stephenoff is a resident of the State of Ohio.

5. During the events described herein, Stephenoff was the Interim Executive Director of Undergraduate Admissions at OSU.

6. Defendant Miner is a resident of the State of Ohio.

7. During the events described herein, Miner was the University Registrar at OSU.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### A. Plaintiff's Background at OSU

8. On June 22, 2017, Plaintiff applied to OSU as a junior transfer student.

9. On July 7, 2017, OSU accepted Plaintiff as a junior transfer student.

10. Plaintiff began his studies at OSU toward a degree in aerospace engineering.

11. During his time at OSU, Plaintiff has been a model student – he has attained a 3.627 grade point average, been named to the Dean's List on two occasions, and won a scholarship for the 2018-2019 academic year.

12. Doe was selected to participate in an all-expenses paid aerospace internship in Scotland for summer 2019.

### B. OSU's Disciplinary Investigation Under the Student Code of Conduct

13. On or about August 31, 2018, OSU informed Plaintiff that it was investigating him for allegedly violating OSU's Code of Student Conduct, Section 3335-23-04 (F), "Dishonest Conduct."

14. Specifically, OSU asserted that Plaintiff failed to disclose another university's Title IX investigation when he submitted his transfer application over 1.5 years prior.

15. The impetus for this investigation was a news article stating that Plaintiff was expelled from another university for a Title IX violation.

16. Initially, Plaintiff was contacted by Kendra Wiechart, a sexual misconduct investigator with OSU's Office of Student Conduct. Ms. Wiechart advised that OSU opened an investigation against Plaintiff and demanded his appearance at a hearing. Ms. Wiechart was concerned about the underlying Title IX allegation at his last university and questioned the veracity of Plaintiff's transfer application responses at the time Plaintiff transferred to OSU.

17. On September 11, 2018, Plaintiff's attorney responded that Plaintiff was truthful on his application and raised the Office of Student Conduct's absence of jurisdiction over the matter in light of the jurisdictional limitations of OSU's Student Code of Conduct.

18. OSU proceeded to hold an administrative hearing on September 12, 2018 where Plaintiff reiterated his position that he was truthful on the transfer application submitted on June 22, 2017.

19. Shortly thereafter, the matter was transferred to the Office of Undergraduate Admissions in light of jurisdictional concerns raised by Plaintiff's counsel.

C. **OSU's Admissions Investigation**

20. On October 18, 2018, OSU notified Plaintiff by letter that OSU was considering the cancellation of his admission and registration based upon "apparent improprieties" relating to the transfer application Plaintiff submitted to OSU on or about June 22, 2017.

21. OSU's Office of Undergraduate Admissions asserted that Plaintiff's responses to the disciplinary questions on his transfer application were false and incomplete, referencing Ohio Administrative Code § 3335-9-20.

22. Again, OSU asserted that Plaintiff failed to disclose another university's Title IX investigation when he submitted his transfer application.

23. The October 18, 2018 letter from OSU requested that Plaintiff respond by November 1, 2018.

24. On November 1, 2018, Plaintiff responded with a written explanation stating that OSU's application asked the following questions regarding disciplinary history:

> Have you ever been found responsible for a disciplinary violation at any school you previously attended?
>
> Are there any unresolved judicial charges still pending at any of your previous institutions?

25. Plaintiff further explained that when he submitted his transfer application, the answer to both of these questions was "no" – Plaintiff had not been found responsible for any violations, and no "unresolved judicial charges" were pending against him.

26. Plaintiff explained that his intent was to respond truthfully; to make sure he did so, he sought the advice of counsel, who confirmed that he should provide a "no" answer to both questions.

27. Plaintiff advised OSU that he did not have his disciplinary case file from his last university and requested more time to respond further.

28. Along with his November 1, 2018 explanation, Plaintiff included the following supporting documents: (i) a copy of his petition against his former institution to overturn the erroneous Title IX decision; (ii) his former institution's answer to the petition; (iii) a text message conversation between Plaintiff and his former attorney showing a screen shot of OSU's transfer

application questions; and (iv) a September 11, 2018 letter from Plaintiff's attorney to OSU confirming that Plaintiff responded truthfully.

29. OSU alleged that Plaintiff's response letter and supporting documents provided to OSU on November 1, 2018 were deficient because they failed to respond to OSU's specific inquiry about his "disciplinary charge" date. OSU insisted on Plaintiff's compliance in providing a release pursuant to the Family Educational Rights and Privacy Act ("FERPA") so that the "disciplinary charge" date could be verified with his last university. OSU allowed Plaintiff until November 13, 2018 to provide a further response.

30. As requested, Plaintiff provided the FERPA release to OSU on November 9, 2018. The FERPA release authorized OSU to "discuss [Plaintiff's current case (including relevant disciplinary history and a copy of [Plaintiff's] disciplinary file" with his last university. The FERPA release contained no restrictions on what questions OSU could ask regarding Plaintiff's disciplinary history. Likewise, the FERPA release contained no restrictions on what responses his last university could respond with.

31. On November 13, 2018, Plaintiff provided a second response to OSU's inquiries, but advised that he did not receive full records from his last institution yet. He had only received partial records. Plaintiff maintained that his responses on the transfer application were always truthful and referenced his screen shot evidence of the questions he was asked by OSU at the time of his application.

32. During this time, Plaintiff noticed that OSU recently changed its transfer application question to the following:

> Have you ever been suspended or dismissed from any college or university for any disciplinary reason, or is a disciplinary **action** from any college or university currently pending against you?

33. In his November 13, 2018 response, Plaintiff raised this noticeable change on OSU's transfer application.

34. From the time Plaintiff submitted his transfer application to present, OSU has used three different terms when asking potential students about disciplinary history – "judicial charges," "disciplinary charge," and "disciplinary action."

35. On January 31, 2019, OSU made a third request for information from Plaintiff regarding his "charge date," including a copy of the "charge letter" that he received from his last university.

36. On February 6, 2019, Plaintiff submitted a third written response explaining, again, that Plaintiff answered the transfer applications questions truthfully and included the following supporting documents: (i) October 23, 2017 letter from his last university, informing Plaintiff that there was sufficient evidence to support allegations of sexual assault that had been made against him in violation of its Policy of Sexual Violence and Sexual Harassment and its Student Code of Conduct; (ii) OSU's August 31, 2018 letter to Plaintiff opening an investigation into Plaintiff's statements on his transfer application to OSU; (iii) a text message conversation between Plaintiff and his former attorney showing a screen shot of OSU's transfer application questions; (iv) correspondence from OSU conveying what it believed the transfer application questions stated on June 22, 2017; and (v) OSU's policy definition of "Charges".

37. Notably, OSU's policies define "Charges" to include "after finishing the investigation, your hearing officer will decide whether or not to issue charges…it means that the investigation produced enough evidence that we're moving forward…" In other words, OSU does not issue charges until after an investigation is complete and the hearing officer decides to issue charges.

38. On March 15, 2019, OSU notified Plaintiff that it was cancelling his admission and registration effective immediately based upon alleged improprieties in his application, namely that Plaintiff's answer of "No" to the question "Have you ever been suspended or dismissed from any college or university for any disciplinary reason, or is a disciplinary charge from any college or university currently pending against you?" was false or incomplete.

39. Despite Plaintiff providing the October 23, 2017 letter to OSU, OSU stated that Plaintiff's response that October 23, 2017 was his charge date was allegedly directly contradicted by one of the policies governing his last university.

40. OSU alleged that his last university's policies define what the charge date is and make clear that "[i]f a Formal Investigation will be conducted, the Title IX Coordinator and Dean will jointly send written notice of the charges to the Complainant." In other words, OSU alleged that his last university defines "notice of charges" as issued upon receipt of a Title IX complaint allegation and the opening of an investigation.

41. OSU alleged that according to his last university's policies, "the October 23, 2017 letter you provided to the University is the notice of investigation findings and recommendations and is neither the notice of charges nor your "charge" date."

42. OSU failed to note that Plaintiff's last university uses several different policies, and that in at least one other set of policies, there is no mention of the terms "charge," "charges," or "notice of charges."

43. OSU alleged that Plaintiff must have been charged with conduct prior to the October 23, 2017 letter, although OSU itself defines charges as not being issued until an investigation is concluded. On its Office of Student Life Student Conduct website, OSU states "*After finishing the investigation*, your hearing officer will decide whether or not to issue charges.

If your hearing officer issues charges, this doesn't mean you have been found in violation. Rather it means that the investigation produced enough evidence that we're moving forward rather than closing our file." ("Office of Student Life Student Conduct Charges." Available at: https://studentconduct.osu.edu/for-students/understanding-the-student-conduct-process/charges/ ).

44. The October 23, 2017 letter from Plaintiff's last university is the letter that Plaintiff received after the investigator determined there was sufficient evidence to proceed further.

45. Plaintiff never received a document titled "notice of charges" from his last university.

46. As the institution, OSU is required to prove the allegations that Plaintiff provided "false and incomplete" information on his application. Instead, OSU placed the burden of disproving the allegations on Plaintiff.

47. OSU concluded, however, that "upon close and careful review of the information submitted and gathered during this review, and based on your repeated deliberate failure to provide documentation to the contrary, [OSU] has determined that you failed to disclose your pending disciplinary charges at [your last university] at the time of your June 22, 2017, application to the University and, therefore, falsified your Application."

48. OSU alleged in its letter, dated March 15, 2019, that Plaintiff agreed on his application that the "submission of incomplete or inaccurate information" would be "sufficient cause for revocation of admission, financial aid, or enrollment." The letter further states that Ohio Administrative Code § 3335-9-20 provides for the cancellation of admission or registration "when false or incomplete information is provided on the application for admission, registration forms, or other official documents."

49. Accordingly, due to OSU's conclusion regarding Plaintiff's alleged false statement on his application, OSU canceled Plaintiff's admission and revoked all credits earned at OSU, allegedly pursuant to the provisions of his application and Ohio Administrative Code § 3335-9-20, including canceling his enrollment in all current Spring 2019 courses.

50. OSU relied on Ohio Administrative Code § 3335-9-20 to cancel Plaintiff's admission and deprive him of all credits he accrued at OSU:

> 3335-9-20 Improper admission or registration.
>
> Admission or registration may be cancelled by the director of undergraduate admissions or the university registrar in cases of improper registration or when false or incomplete information is provided on the application for admission, registration forms, or other official documents. **No credits earned subsequent to such cancellation and prior to proper admission or registration shall be entered upon the permanent record of the student.** Students whose admission or registration is cancelled are not entitled to any refund of fees. (emphasis added)

51. The statutory language, "no credits earned subsequent to such cancellation and prior to proper admission," is unclear and confusing.

52. The credits that OSU seeks to rescind were earned prior to Plaintiff's cancellation of his admission (March 15, 2019) and subsequent to Plaintiff's proper admission and registration (July 7, 2017). This is the exact opposite of what the statute contemplates.

53. Plaintiff should be allowed to retain all credits subsequent to such cancellation as contemplated by the statute.

## AS AND FOR A FIRST CAUSE OF ACTION
**Violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution Pursuant to 42 U.S.C. §1983 – Procedural Due Process**

54. Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

55. The Due Process Clause of the Fourteenth Amendment to the United States Constitution applies to OSU's disciplinary process.

56. Defendants were acting under color of state law, when they violated Plaintiff's constitutional rights.

57. Plaintiff has a constitutionally protected property interest in his continued education at OSU, including the various educational and training programs it supports, that cannot be deprived without due process of law.

58. Plaintiff has a constitutionally protected liberty interest in his pursuing future educational opportunities that cannot be deprived without due process of law.

59. Plaintiff has a constitutionally protected liberty interest in his reputation that cannot be deprived without due process of law.

60. Defendants failed to provide adequate notice to Plaintiff regarding the application of its policies.

61. Specifically, Defendants failed to provide adequate notice as to which definition of the term "charges" OSU uses to determine whether transfer application answers are truthful.

62. A finding of misconduct by an educational institution can have a substantial, life-long impact on one's professional life, personal life, and reputation

63. Defendants' actions have branded Plaintiff a dishonest individual, a distinction resulting in severe reputational stigma.

64. OSU will disclose this false and stigmatizing information about Plaintiff to other colleges or universities where Plaintiff seeks admission as a transfer or graduate student.

65. This disclosure will prevent Plaintiff from transferring to another school to continue his education.

66. As a result of the due process violations described herein, Plaintiff has been wrongfully disciplined and has been deprived of his constitutionally protected property and liberty interests.

67. OSU's determination of responsibility for providing "false and incomplete" information, the revocation of Plaintiff's admission, and rescinding of the credits earned by Plaintiff are part of Plaintiff's permanent educational record.

68. Plaintiff has lost two years of educational progress as a result of Defendants' actions.

69. Plaintiff has lost the opportunity to engage in an all-expenses-paid internship at Astrosat UK in Scotland as a result of Defendants' actions.

70. By reason of the foregoing, Plaintiff is entitled to a judgment ordering reversal of the decision and sanctions and damages in an amount to be determined at trial, including pre-judgment interest, attorneys' fees, expenses, costs, and disbursements, as well as all equitable and injunctive relief needed to reestablish Plaintiff's position and standing at OSU as it was prior to the cancellation of his admission and revocation of his credits.

71. Pursuant to 42 U.S.C. §§ 1983 and 1988, John Doe is entitled to recover the costs of this lawsuit, including his reasonable attorneys' fees.

**AS AND FOR A SECOND CAUSE OF ACTION**
**Violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution Pursuant to 42 U.S.C. §1983 – Procedural Due Process**

72. Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

73. The Due Process Clause of the Fourteenth Amendment to the United States Constitution applies to OSU's disciplinary process.

74. Defendants were acting under color of state law, when they violated Plaintiff's constitutional rights.

75. Plaintiff has a constitutionally protected property interest in his continued education at OSU, including the various educational and training programs it supports, that cannot be deprived without due process of law.

76. Plaintiff has a constitutionally protected liberty interest in his pursuing future educational opportunities that cannot be deprived without due process of law.

77. Ohio Administrative Code § 3335-9-20, the policy that Defendants used to cancel Plaintiff's admission and rescind the credits that Plaintiff earned at OSU, is unconstitutionally vague.

78. Ohio Administrative Code § 3335-9-20's prohibitive terms are not clearly defined such that a person of ordinary intelligence can readily identify the applicable standard for inclusion and exclusion.

79. Ohio Administrative Code § 3335-9-20 does not include clear standards guiding the discretion of the public officials vested with the authority to enforce it, namely Defendants.

80. The lack of clear standards invites abuse by enabling the officials, namely Defendants, in administering Ohio Administrative Code § 3335-9-20.

81. Defendants administered Ohio Administrative Code § 3335-9-20 in an arbitrary and contradictory manner when they cancelled Plaintiff's admission and rescinded his credits.

82. As a result of the due process violations described herein, Plaintiff has been wrongfully disciplined and has been deprived of his constitutionally protected property and liberty interests.

83. By reason of the foregoing, Plaintiff is entitled to a judgment ordering reversal of the decision and sanctions and damages in an amount to be determined at trial, including pre-judgment interest, attorneys' fees, expenses, costs, and disbursements, as well as all equitable and injunctive relief needed to reestablish Plaintiff's position and standing at OSU as it was prior to the cancellation of his admission and revocation of his credits..

84. Pursuant to 42 U.S.C. §§ 1983 and 1988, John Doe is entitled to recover the costs of this lawsuit, including his reasonable attorneys' fees.

**AS AND FOR A THIRD CAUSE OF ACTION**
**Violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution Pursuant to 42 U.S.C. §1983 – Substantive Due Process**

85. Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

86. The Due Process Clause of the Fourteenth Amendment to the United States Constitution applies to OSU's disciplinary process.

87. The Fourteenth Amendment of the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law."

88. The Fourteenth Amendment's due process protections are required in higher education disciplinary decisions, including the disciplinary decisions issued under OSU's policies.

89. The Due Process Clause forbids arbitrary deprivations of liberty where one's good name, reputation, honor, or integrity is at stake because of the government's actions.

90. The requirements of the Due Process Clause extend to state actors such as Stephenoff and Miner operating under the color of state law, including when such state actors are sued in their individual capacity.

91. Defendants were acting under color of state law, when they violated Plaintiff's constitutional rights.

92. Plaintiff has a constitutionally protected property interest in his continued education at OSU, including the various educational and training programs it supports, that cannot be deprived without due process of law.

93. Plaintiff has a constitutionally protected liberty interest in his continued education at OSU, including the various educational and training programs it supports, that cannot be deprived without due process of law

94. Plaintiff has a constitutionally protected liberty interest in his pursuing future educational opportunities that cannot be deprived without due process of law.

95. Defendants' improper finding will stigmatize Plaintiff by branding him as dishonest.

96. The actions taken by Defendants to deprive Plaintiff of his constitutionally protected liberty and property interests were arbitrary, capricious, and shocking to the conscience.

97. Defendants have rescinded the credits that Plaintiff rightfully earned over the course of one and a half years at OSU.

98. All available evidence indicates that Plaintiff thrived academically at OSU, as he was twice named to the Dean's list, was awarded a year-long academic scholarship, and was selected for an all-expenses-paid internship in Scotland.

99. As a result of these due process violations, Plaintiff has been wrongfully disciplined and has been deprived of his constitutionally protected property and liberty interests.

100. Due process requires that no serious disciplinary action be taken against an individual unless it is based upon substantial evidence.

101. Defendants' findings were made without any evidence.

102. In the alternative, Defendants' decision to rescind Plaintiff's credits is not rationally related to any legitimate state interest.

103. By reason of the foregoing, Plaintiff is entitled to a judgment ordering reversal of the decision and sanctions and damages in an amount to be determined at trial, including pre-judgment interest, attorneys' fees, expenses, costs, and disbursements, as well as all equitable and injunctive relief needed to reestablish Plaintiff's position and standing at OSU as it was prior to the cancellation of his admission and revocation of his credits.

104. Pursuant to 42 U.S.C. §§ 1983 and 1988, John Doe is entitled to recover the costs of this lawsuit, including his reasonable attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE,** for the foregoing reasons, Plaintiff demands judgment against Defendants as follows:

(i) on the first cause of action for a violation of 42 U.S.C. §1983, a judgment ordering reversal of the decision and sanctions and damages in an amount to be determined at trial, including pre-judgment interest, attorneys' fees, expenses, costs, and disbursements, as well as all equitable and injunctive relief needed to reestablish Plaintiff's position and standing at OSU as it was prior to the cancellation of his admission and revocation of his credits;

(ii) on the second cause of action for a violation of 42 U.S.C. §1983, a judgment ordering reversal of the decision and sanctions and damages in an amount to be determined at trial, including pre-judgment interest, attorneys' fees, expenses, costs, and disbursements, as well as all equitable and injunctive relief needed to reestablish Plaintiff's position and standing at OSU as it was prior to the cancellation of his admission and revocation of his credits;

(iii) on the third cause of action for a violation of 42 U.S.C. §1983, a judgment ordering reversal of the decision and sanctions and damages in an amount to be determined at trial, including pre-judgment interest, attorneys' fees, expenses, costs, and disbursements, as well as all equitable and injunctive relief needed to reestablish

       Plaintiff's position and standing at OSU as it was prior to the cancellation of his admission and revocation of his credits; and

(iv)    awarding Plaintiff such other and further relief as the Court deems just, equitable and proper.

**Dated: March 21, 2019**

                                    By:  /s/ Eric J. Rosenberg_____

**ROSENBERG & BALL CO, LPA**
Eric Rosenberg, Esq.
Ohio Bar No. 66958
395 North Pearl Street
Granville, Ohio
Tel: (740) 644-1207
Email: erosenberg@rosenbergball.com

-and-

**WARSHAW BURSTEIN, LLP**
Kimberly C. Lau, Esq. (*pro hac vice* pending)
James E. Figliozzi, Esq. (*pro hac vice* pending)
555 Fifth Avenue
New York, NY 10017
Tel: (212) 984-7700
Email: klau@wbny.com
       jfigliozzi@wbny.com

*Attorneys for Plaintiff John Doe*